Case numbers 15-1616 and 15-1678, Tri-State Wholesale Building Supplies, Incorporated v. National Labor Relations Board. Arguments not to exceed 15 minutes per side. And Mr. Dorsey, for the petitioner, you may proceed. May it please the Court, my name is Edward Dorsey with the law firm of Woodland Lamping here in Cincinnati. I'd like to reserve three minutes for rebuttal. This matter arises out of a walkout of 11 employees in January 2014 over a dispute about holiday pay. There are two main issues before the Court. The first issue is the company's decision to hire permanent replacements for the strikers. Here, all of the record evidence shows that the company hired permanent replacements, not temporary replacements. The critical issue here in the context of this appeal is that there is not only no union here, but there was no picket line. This is critical because it is the existence of a picket line that creates ambiguity about the status of the replacement workers. The picket line raises the question of whose job is it at the end of the strike. If there is no picket line, if the replacements are unaware of the strike, then the replacements have no reason to believe that they are anything other than permanent replacements. I thought that the ALJ said that there were four or so people who knew about the strike who were four replacements. Well, the Board said that in decision one, in footnote one of its decision. It explicitly recognized the importance of the fact that there was no strike there. But the Board's analysis of that issue is incredibly flawed. First of all, the Board said that there were four replacements who knew people who worked for the company. The record shows that there were only three, not four. Now that in itself probably isn't as positive, but it does suggest a certain amount of sloppiness in review of the record by the Board itself. The more important issue is the Board went on to conclude that because three or four, in its view, of the replacements knew someone who worked for the company, that they therefore knew about the strike and had reason to doubt whether or not they were permanent or temporary. That logic is incredibly flawed. Two of the three replacements who knew someone who worked at the company were the son of the company president and the nephew of the company president. The company president was the very person that made the decision to hire permanent replacements. The Board's conclusion that they had reason to doubt whether they were permanent or temporary is illogical. It makes no sense. Their relative made the decision to hire permanent replacements. They had to have known that they were permanent. Is there something in the documentation on the hiring that indicated that the people were permanent? No. In fact, to the contrary, the application said, I understand that if I am hired, such hiring will not be for any definite period of time. Yes, they were hired as at-will employees. And the Board has held that at-will employees can be permanent replacements. There's sort of a tension there, as we discussed in the brief about that, but the Board has decided the fact that someone hires replacements as at-will employees doesn't mean that they're not permanent replacements. But the ALJ's findings of fact indicate that these people were not told that they were being hired as permanent employees, nor that they would become permanent employees after an introductory period of 60 days. Correct. There was no express discussion about that. But they were hired under the terms that they were hired. They were hired just like any other employee in the previous 44 years of the company's existence. You know, I have to say this. You were talking about the two relatives that were hired. I mean, this all happened very quickly. There was a walkout, and within, I don't know, 36 hours or something, they had people coming in to interview to replace these folks. It looks like they were trying to hustle that up as quickly as they could, even though some of these workers had been working there for like 30 years. If there was some sort of, let's get this done overnight on a Saturday so that we can terminate these people, it seems to me that who would know that would be the relatives. I'm not sure hiring relatives helps your case. Well, I think the intention was to hire permanent replacements so they could get back into production. And they wanted to do that as quickly as possible for obvious business reasons. And so, yes, the decision was made quickly. The walkout occurred on Wednesday. The decision to hire permanent replacements was made on Friday. There was a job fair on Saturday with the intention of bringing these people in. If they had wanted to hire temporary replacements, they could have gone to a temp agency and gotten people in right away. They didn't do that. They went through this. I heard you do that on a Saturday. I can't imagine how you could put together a, quote, job fair on a Saturday, just sort of overnight. That amazed me. Well, and there are a couple of ways you go about doing that. They had applications on file so they could contact those people and ask them to come in. There are social service agencies that maintain lists of people who are looking for jobs and need jobs, and they contacted those people and had this job fair, and they had 15, 18 people come in to apply for jobs. So, yes, it was done quickly, but the reason wasn't because they wanted to try and get these people out, but because they wanted to restore production. Well, it might have saved a lot of time and resources just to give these people pay for New Year's Day. Well, I mean, hindsight sometimes is a wonderful thing, but there was a legitimate dispute. The company had paid out a lot of money in bonuses, and all of a sudden there was this issue over holiday pay, and the employees decided to walk out. That was their right to do under the Labor Act. It was also the company's right to hire permanent replacements for them. How many of the replacements are still there? I do not know at present. Did you have the replacements testify as to what their understanding was? Did not. Well, that seems odd. I mean, isn't that kind of a relevant consideration? Well, I mean, that was a consideration at the time that we were going into the hearing. First of all, the complaint filed by the board didn't raise that as an issue. But the permanence was an issue, wasn't it? Well, it's always an issue. I would have thought this was pretty easy testimony for you to get and help you, and yet you didn't do it, which makes me think, well, maybe they wouldn't have testified the way you want. Well, how many would we have had to call to testify was one of the questions in order to demonstrate what their understanding was? More than zero. What we showed was the process. I mean, the law requires that we show that the manner in which they were hired would have led them to believe that they were permanent. We showed that the process that they used, interviewed by two different people, specifically addressed by the company president as to how and go about getting a drug test, having a background screen, that that process would have led them to believe, as we've said, that they were just as permanent as any other employee hired by the company in the prior 44 years. When there is no evidence to the contrary, that evidence is sufficient to carry the burden of proof. The second issue that is before the court is the board found that after the hiring of the permanent replacements, the company unlawfully terminated the striker's employment. More specifically, the board found that the company's communications with the strikers would have reasonably led the strikers to conclude that they had been discharged and not just permanently replaced. The company told the strikers that they had, A, been replaced, B, should not report to work for any future shifts because their position had been filled, C, their employment was terminated, D, in the event an opening became available because a replacement left, the company would determine whether or not the striker was eligible for rehire and that the employees, those strikers, would receive the company's standard separation information. And they also got a thank you for their service. Yes. Which is an odd thing to say. I don't usually say that to people and expect them to come back. Well, the reality here is that a permanently replaced economic striker is far more like a terminated employee than they are like a current employee. A permanently replaced economic striker has no current job, they have no current right to reinstatement, and at most they have a contingent right to, at some point in the future, get reinstatement. That's far more like a terminated employee than it is like a current employee. And that's why the courts of appeals frequently refer to the permanent replacement of an economic striker as the discharge of that striker. I mean, the courts have done that. That's what they do. Now, the counsel for the general counsel indicates that's just loose language by the courts, but it reflects the reality that that's what the permanent replacements, I mean, it just reflects the reality of the similarity between a permanently replaced economic striker and a terminated employee. Here, the main issue that the board found issue with in terms of the company's communications with the strikers was that it found that the company did not adequately apprise the strikers of their potential right to reinstatement. The way the board analyzes it, that right to reinstatement is absolute, and it is by no means absolute. It is undisputed in the briefs before the court that there are four reasons, four contingencies, that must be satisfied before a striker is entitled to reinstatement. First of all, the striker must have made an unconditional offer to return to work. That never happened here. They have to indicate a willingness to abandon the strike. Two, the striker loses reinstatement rights if they obtain substantially equivalent other employment. So once they accept employment somewhere else, they've abandoned employment with the employer. Third, the striker must be qualified for the position that opens up. And fourth, the striker can't have engaged in egregious misconduct that would have disqualified them from further employment. So the board's conclusion was, oh, you didn't go through all the detail of what the reinstatement rights are. Well, the law doesn't require that. What the company did was a reasonably accurate description of the rights as permanently replaced economic strikers. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Michael Hickson on behalf of the National Labor Relations Board. Substantial evidence supports the board's finding that the company violated Section 8A1 of the Act by discharging 10 of its employees for engaging in a protected economic strike. As the company conceded on page 14 of its opening brief, the legal standard is settled. Whether a discharge has occurred depends on the reasonable inferences that the affected employees could draw from the employer's words or conduct. And it's the board's position that the company's analysis of the discharge question really completely and utterly loses sight of that controlling standard, which this Court has recognized in at least three decisions is the controlling standard. And under that standard, with a proper focus on the standard, viewing the events through the eyes of the employees and the reasonable inferences that they could draw, there can be no doubt that there is substantial evidence in the record that supports the board's finding that the company's communications effectuated their discharge. The January 12th letter, which the company sent to all of the strikers in which it read to most of them verbatim on January 11th, it squarely informed the employees your position has been filled and your employment terminated. And those unequivocal words alone would lead any reasonable employee to conclude they had just been fired. The company did not leave anything to inference. In the views of a reasonable striker, receiving that letter, hearing those words from the company president, would make them think, I've just lost my job. The letter then goes on to only reinforce and confirm the discharge message. It tells the employees that in the event that there's an opening in the future, the company will determine whether you are eligible for a rehire and you may be offered that position. This reasonably creates the impression, again, viewing the events from the employees' eyes, not how the company would view them, that it's a matter for the company's sole discretion to continue whether it might consider them as a potential job applicant for future openings. And the letter goes on. It hammers the point home. It tells them you will be receiving the standard separation information and thanks them for their service to the company, wishes them success in their future endeavors. Again, any employee, reasonably, would hear those words, read those words, and understand that this relationship that I've had with this company is over. It is done with. I am discharged. Looking at the letter as a whole, all of those statements together, frankly, the board's position is it can be no question that there is substantial evidence under the deferential standard of review, substantial evidence that, as this court put it in the accurate tool in manufacturing case, that reasonable employees could have understood the company's words as words of termination. Indeed, the company used the word terminated. Could a reasonable inference be that they could be eligible for rehire? Your Honor, could that be a reasonable inference? I don't think so. I think that the letter, when, again, looking at it as a whole, leading off with the very statement, your employment has been terminated, then followed by the company will determine whether you may be eligible for a rehire. Again, viewing... But only if the replacements are gone at some point in the future. Yes, Your Honor. Wasn't that part of the statement? Yes, Your Honor. And then furthermore, following that up with the statements about standard separation information, thank you for your service with the company. We wish you luck in your future endeavors. I think that looking at the communication as a whole, the reasonable inference, again, from the employee's eyes, which is the controlling standard, would be that they've been discharged. What about this issue about whether the people that were hired were permanent? Yes, Your Honor. So that is a relevant issue. I don't think that the company quite made it clear in their briefs, and I'm not sure if they did this morning or not, but I hope we did in our brief, and I'll try again to explain here that the permanent replacement issue is indeed a relevant issue in this case, but it's relevant only as a remedial matter. The violation that the Board found is that the company violated Section 8A1 by discharging the employees. So the permanent replacement question comes into play in determining the reinstatement and back pay rights of the unlawfully fired workers. But what if we thought it was temporary replacements? Wouldn't that bear on the discharge inquiry? No, Your Honor. So a discharged striker, unlike an economic striker who has not been discharged, a discharged economic striker, once they've been discharged, they are entitled to reinstatement and back pay automatically. They don't need to unconditionally offer to return to work. And so as soon as they've been discharged, they're entitled to that reinstatement and back pay  or temporary, where permanent replacement comes into play. Why doesn't it bear on the inquiry? I mean, the question is what the company was trying to do, how people would have perceived what they were doing. Well, but, Your Honor, the more clear it is they were permanent replacements, the more that might say one thing, and the more it's clear they were temporary, wouldn't that bear on this inquiry? Well, Your Honor, but the facts that go, the evidence that goes to determining whether the replacements were temporary or permanent, those aren't facts that the strikers were aware of. And, again, the discharge analysis, as it's been long settled and this Court has recognized, the analysis is very much focused on the employees, the affected employees, the ones who have been allegedly discharged. It's their perspective, what they would reasonably understand or reasonably infer. But where the permanent replacement does come into play is, by default, the discharged striker is entitled to back pay and reinstatement, like any other unlawfully discharged employee under the Act, immediately. Immediately at the moment of the discharge. However, the Board has found that if the employer proves that it permanently replaced the employee before it unlawfully discharged him or her, then the reinstatement and back pay rights are deferred until the replacement leaves. So that's where it comes into play. The law is settled that the employer bears the burden to prove that the replacements are permanent. The presumption is that they're temporary, unless the company meets its burden of proof. And the company, there's substantial evidence in the record that supports the Board's finding. And permanent replacement is a question of fact. This Court has explicitly recognized that the question of permanent replacement is a question of fact. So the substantial evidence standard of review, again, a very deferential standard applies. Excuse me. So the company failed to carry its burden. That's what the Board found. Substantial evidence supports that. It's undisputed that the company did not tell any of these replacement workers that it hired that they were permanent replacements. It's undisputed that the company did not tell any of these replacements what their job retention or job security rights were vis-a-vis the striking workers. And it's also undisputed that the company never told these replacement workers that they were permanent employees or that they would or might become permanent employees. And then on top of all that, as I think was noted during the prior discussion, the company failed to call a single replacement worker to testify. The standard is that the company has to show not only its intent to hire permanent replacements, which we don't dispute here, but that it proved that the replacement workers had a mutual understanding with the company that they would not be displaced to make room for returning strikers. And so the company failed to do that in light of the undisputed points that I mentioned and then their failure to have one or more replacement workers come into court under oath, explain what was their understanding when this all happened. What about their point that the documentation is the same as it was for other people that were hired wholly apart from this event? Your Honor, our position is that has no bearing on the analysis because it's the replacement workers' understanding. There's no evidence whatsoever in the record to suggest that the replacement workers would have any idea of whether this manner or method of hiring was at all similar or not similar to the way that the company normally extends offers. Also, the company does hire temporary workers. I don't know if there's evidence in the record to show whether they had temporary employees at the time that this occurred, the time of the events. But, excuse me, it has hired temporary employees. And again, the presumption is that the replacements are temporary unless the company satisfies its burden of proof. I think what the company is really trying to do, even though it says that it recognizes its burden, I think it's really not recognizing its burden. I think that what it really boils down to is an attempt to reverse the presumption, to say that the presumption is that the replacements are permanent unless the general counsel at trial proves that they're temporary, which is exactly the opposite of the settled law of the board and the courts. Counsel mentioned that, in the company's view, the issue of the absence of a picket line is important. It's really not important. The company cites no authority whatsoever to support this proposition, which, as far as I can see, is a very novel proposition, which has never been considered or addressed in any decision of the board or the courts. There is no case, no case that I'm aware of, and the company has not identified any case, any decision, any authority that says that the presence or absence of a picket line is a significant factor or even a relevant factor in the permanent replacement analysis. There is no authority, the company identifies none, that says that whether a replacement worker is aware of the existence of a strike would suggest or would weigh in favor of a finding of permanence. And, in fact, as we asserted in our briefing, we firmly believe, given that the standard is that the replacement must be proven to have understood that they would not be displaced by a returning striker, if the replacement worker does not know that there is a strike, then that would at least weigh strongly against any finding that the company, excuse me, that the replacement held the requisite understanding. Remind me what the issue is on the four or the three, whichever it is, employees knowing that they were replacing strikers. Is that what the four or three newly hired employees were alleged to have known? Your Honor, so there were about, the board found that there were about eight or nine replacement workers hired at the time that the discharges occurred. And the board found, drew an inference that three or four of them, a few of them, did know about the strike based on their relationships with people that worked at the company. But that is not at all, contrary to the suggestion of the company, that is not at all critical, even important, to the board's finding because the board, Your Honor, adopted in full and agreed with the judge's conclusion, determination that the company failed to satisfy its burden of proof that any of the replacement workers had been shown, had been established, as was their burden, that they were permanent. And then the board rejected outright the logic of the company's argument that a replacement worker who is not aware of the strike would necessarily understand that they are a permanent replacement. So this three or four employee thing is... It's really not important, Your Honor. It's irrelevant. It's irrelevant, Your Honor. The board was... Well, is there any relevance to the fact that a couple of those people were related to the company owner and therefore had to know that they were replacing strikers? I mean, they had to know of the strike. That's my question. Well, yes, the board inferred that they knew of the strike. In doing so, in inferring that those and the few people, the few workers who did know people who worked at the company knew of the strike, the board was really just pointing out an error in the factual premise of the company's argument. But it was not at all hinging its determination that they had not satisfied their burden of proof on that inference. Because, again, the board concluded that the judge, agreed fully with the judge, that the company had failed to satisfy its burden as to any of the replacements. And it inferred only that a few knew of the strike. The big picture sort of point here on the permanent replacement question is that on this record, regardless of whether any given replacement worker did know of the strike, did not know of the strike, there is just no evidence to show, to satisfy the company's burden of proof, that they understood they would not be displaced by returning strikers, that their job security, their job retention interests trumped those of the returning strikers, regardless of knowledge of the strike. I guess that I would respond maybe to a point company counsel made, that the board, in its termination analysis, focused on the main issue being that the company did not adequately apprise the strikers of their reinstatement rights. That's simply not true and not supported by anything in this case. As I said before, the board focused its analysis on the controlling legal standard undisputed by the company, conceded in its opening brief on page 14 as the controlling standard, and recognized by this court the standard of what the strikers, the affected workers, how they would reasonably perceive or view the events and the reasonable inferences that they could draw from them. Your Honors, I'm not sure if you have any questions for me. I'm short on time. If not, I respectfully ask that the court enforce the board's order in full. Thank you. Your Honors, just a couple of quick points in rebuttal. First of all, I would submit to you that the board explicitly acknowledged the importance of the absence of a picket line by discussing it in footnote one of their decision. Had it been a trivial matter of no importance to the decision of this case, they would not have discussed this issue. I would also point out that in the previous 80 years of the history of the National Labor Relations Act, there are no cases that we've been able to find out there that deal with the situation of permanent replacements in a situation where there is no visible picket line. That makes this case a little bit different and that makes that fact particularly important. The second point I would like to make is that counsel indicated that the company hires temporary employees. The company has three categories of employees, full-time, part-time, and temporary. The record shows here that at the time of this incident, there were no temporary employees. It's rare that it hires temporary employees. These replacements were not hired as temporary employees in that category. They were hired as full-time employees. If there are any other questions, I'd be glad to entertain them. Otherwise, I would suggest that the court should vacate the board's decision. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?